**F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**LOCAL 1402, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION OF TAMPA, FLORIDA AND VICINITY AFL–CIO, Defendant-Appellee.**

No. 78–2338.

United States Court of Appeals, Fifth Circuit.

May 14, 1980.

Patricia G. Reeves, Robert E. Kopp, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Hamilton, Douglas & Bennett, Frank E. Hamilton, Jr., Frank E. Hamilton, III, Tampa, Fla., for defendant-appellee.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The Secretary of Labor brought this action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481, et seq., against the defendant, Local 1402, International Longshoremen's Association of Tampa, Florida and Vicinity, AFL–CIO (Union), to set aside the Union's December 9, 1975, election of officers. The Union's bylaw provides, as an eligibility requirement for election of officers, that a member must have attended, or been excused from, at least one of the regular meetings in each of the twelve months prior to nomination.[1] Two such meetings were held each month. The excuse provisions were liberal, requiring no reason for the absence; a member must simply notify the Union office in advance of a scheduled meeting in order to obtain an excused absence. Pursuant to this eligibility provision, only 6.3% of the Union members were eligible; 93.7% were not.

The district court granted the Union's motion for summary judgment, holding that the eligibility requirement was reasonable and thus permitted under § 401(e) of the Act, 29 U.S.C. § 481(e). The Secretary timely filed his notice of appeal. We reverse.

The sole issue before us is whether the eligibility requirement violates § 401(e) of the Act, 29 U.S.C. § 481(e), which provides:

(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues. The votes cast by members of each local labor organization shall be counted, and the results published, separately. The election officials designated in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election. The election shall be conducted in accordance

---

1. All members were automatically credited with attendance in the first two months of the twelve-month period relevant in this case. Therefore, the parties tried this case assuming that the eligibility requirement was to attend at least one of the regular meetings in each of the ten months prior to nomination.

with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.

The Supreme Court has held that the statute was designed to guarantee free and democratic union elections similar to the model of our political elections, and that the permitted "reasonable qualifications" on eligibility to hold office were intended to have only a narrow reach. *Steelworkers v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977); *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968).

*Steelworkers* involved a challenge to a union bylaw setting eligibility requirements for union office holders. Members had to attend at least one-half of the union meetings for three years prior to the election. Meetings were held once a month. Thus, if a union member had attended no meetings at all for the first eighteen months of the relevant three-year period, he would have to attend each meeting for the last eighteen months. Ninety-six and one-half percent of the members failed to meet the eligibility requirements. The Supreme Court held that the antidemocratic effects of the eligibility requirement outweighed the interests urged in its support, emphasizing that "an attendance requirement that results in the exclusion of 96.5% of the members from candidacy for union office hardly seems to be a 'reasonable qualification' consistent with the goal of free and democratic elections. A requirement having that result obviously severely restricts the free choice of the membership in selecting its leaders." *Id.* 429 U.S. at 310, 97 S.Ct. at 615.

The Union attempts to escape the controlling effect of the *Steelworkers* case by pointing to two distinctions: first, that the *Steelworkers* rule provided for only very limited excused absences, whereas the instant rule provides liberally for excused absences; and second, that the *Steelworkers* rule required the formulation of an intention to run for office eighteen months prior to the election, whereas the instant rule requires only ten months advance intention.[2]

The Union argues that the instant rule places only a minimal burden upon Union members, because of the liberal excuse provisions. A member need only call the Union office prior to a meeting. He need give no reason for his inability to attend. We agree that the burden thus imposed on Union members is slight indeed. However, we note that the same argument was rejected in the *Steelworkers* case. The Supreme Court stated: "[T]his argument misconceives the evil at which the statute aims. We must judge the eligibility rule not by the burden it imposes on the individual candidate, but by its effect on free and democratic processes of union government." 429 U.S. at 310–311, n.6, 97 S.Ct. at 615.

The Union argues that the liberal excuse provisions here make it considerably easier in this case, as compared to *Steelworkers*, to meet the eligibility requirements. This we acknowledge. A member who merely calls in before each meeting will meet the eligibility requirements without ever having attended a single meeting. Rather than adding strength to the Union's case, however, this undermines the only legitimate purposes that have been asserted on behalf of the Union's bylaw: *i. e.*, that the rule encourages attendance and insures nominees who will have at least minimal awareness and interest in the activities of the Union. The only purposes for the rule having evaporated, we are left with a rule which serves no demonstrable purpose, but which, on the other hand, significantly limits eligible candidates and imposes a substantial adverse effect on the democratic process.[3]

---

2. The district court concluded that these two factors adequately distinguished *Steelworkers* from the case at hand. We disagree.

3. The First Circuit rejected a similar argument with respect to a more liberal "excuse" provision, permitting a member to mail a post card within a week after a meeting to obtain attendance credit. *Usery v. Local Division 1205, Amalgamated Transit Union*, 545 F.2d 1300 (1st Cir. 1976). The First Circuit noted that such

As the second factor distinguishing the instant case from *Steelworkers*, the Union points to the fact that a potential candidate in *Steelworkers* had to formulate his intention to seek election eighteen months in advance, whereas only a ten-month advance intention is necessary in the instant case. We acknowledge that ten months is substantially less than eighteen months.[4] The Supreme Court in *Steelworkers* was concerned about the eighteen-month requirement because election issues and membership interest in changing union leadership would likely emerge only shortly before elections. The Supreme Court reasoned that the advance-intention requirement would eliminate potential candidates whose interest in running was aroused too late to comply with the qualifying procedures. The same concern is operative in this case; election issues and membership interest in ousting Union leadership might well be aroused after the ten-month deadline.[5]

We conclude that the rationale of the *Steelworkers* case controls the decision in this case. On the particular facts of this case, where the legitimate purposes served by the rule are weak at best, where a potential candidate must formulate his intention to run ten months in advance of the election, and where the impact of the rule is to render ineligible 93.7% of the union membership, we hold that the "antidemocratic effects of the meeting-attendance rule outweigh the interests urged in its support." 429 U.S. at 310, 97 S.Ct. at 615.

We reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

bylaw served little purpose other than to screen out those who had not decided to run for office soon enough to meet the attendance requirement. *Id.* at 1304, n.3.

4. Reflection suggests that the difference between the ten-month requirement in the instant case and the eighteen-month requirement in *Steelworkers* is not as substantial as would appear at first glance. Unlike the rule in this case, the *Steelworkers* rule would permit any meetings attended by a union member during the first eighteen months of the relevant three-year period to be credited against the number of meetings which must be attended during the last eighteen months. For example, if a member had attended five meetings during the first eighteen months of the relevant three-year period, he would need to attend only thirteen meetings in the last eighteen months. On the other hand, a member in the instant case must attend at least one of the two meetings in each of the ten months preceding the election. Good attendance prior to the relevant ten-month period would be of no benefit. Moreover, in the instant case, a union member who missed, and was not excused from, both meetings in any single month during the relevant ten-month period would be disqualified.

5. The Union also argues that the emphasis placed upon the actual antidemocratic impact of the rule places the Union in the unfortunate position of not being able to predict, with any degree of certainty, whether or not a particular requirement will be valid under the statute. The short answer to this contention is that the same argument was made and rejected in *Steelworkers, supra,* 429 U.S. at 314, n.9, 97 S.Ct. at 617. The Supreme Court suggested that it should have been obvious to the *Steelworkers* union that the rule would have a significant antidemocratic impact. Similarly, in this case, it should have been obvious to the Union that its rule was having a substantial antidemocratic effect. Moreover, the weakness of the asserted legitimate purposes for this rule should have forewarned the Union.