6 F.3d 978
 144 L.R.R.M. (BNA) 2393, 126 Lab.Cas. P 10,883
 Robert REICH, Secretary of Labor, United States Department of Labor
v.
LOCAL 30, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA,
AFL-CIO, Appellant.
 No. 91-3799.
 United States Court of Appeals,
Third Circuit.
 Argued May 15, 1992.
Decided Oct. 6, 1993.
 
 Frederick Bowen, Sharon E. Hanley (argued), Marshall J. Breger, John F. Depenbrock, Barton S. Widom, and Helene Boetticher, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for appellee.
 Ernest B. Orsatti (argued), Jubelirer, Pass & Intrieri, P.C., Pittsburgh, PA, for appellant.
 Before: STAPLETON, ALITO, and ROTH, Circuit Judges.
 OPINION OF THE COURT
 ROTH, Circuit Judge:
 
 
 1
 Reasonableness does not have a bright line definition. What is reasonable varies with the circumstances. Congress has specifically allowed labor unions to impose "reasonable qualifications" upon the eligibility of union members to be candidates in union elections. In this appeal, we must determine whether a union bylaw, which restricts such eligibility, is reasonable. The Secretary of Labor has argued that it is not.
 
 
 2
 The district court granted summary judgment in favor of the Secretary. The Secretary's complaint alleged that Local 30 of the Teamsters Union had violated section 401(e) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA" or "the Act"), 29 U.S.C. Sec. 481(e), by "depriving a member in good standing of a reasonable opportunity to be a candidate" in the October 1990 election. The Union's bylaw terminates a member's good standing status six months after the member is no longer employed at a craft within the jurisdiction of the local. Because the Secretary has not introduced any evidence to show that the Union's restriction is inconsistent with the Act's purpose to ensure "free and democratic" elections, we conclude that the Secretary is not entitled to judgment as a matter of law that Local 30's bylaw is unreasonable. We find to the contrary that the Union's qualification is reasonable and does not violate the Act; therefore, we will reverse the district court's summary judgment order.
 
 I.
 
 3
 This action is based upon Local 30's ruling that Thomas C. Felice, a member of Local 30 from November 1978 through January 31, 1989, was not eligible to run for the office of trustee in the election held on October 22, 1990. Local 30 is a local labor organization based in Jeannette, Pennsylvania. It is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("IBT"), an international labor organization based in Washington, D.C. Local 30 has approximately 2,400 members who are employed as truck drivers, warehousemen, healthcare workers, service and maintenance employees, security and office workers, cable TV installers, and Pennsylvania Turnpike supervisors.
 
 
 4
 As an affiliate of the IBT, Local 30 is bound by the IBT Constitution. Article XVIII, Section 6(a), of the 1986 IBT Constitution reads, in pertinent part:
 
 
 5
 When a member becomes unemployed in the jurisdiction of the Local Union, he shall be issued an honorable withdrawal card upon his request. If no request is made, an honorable withdrawal card must be issued six (6) months after the month in which the member first becomes unemployed, if he is still unemployed at that time.
 
 
 6
 (emphasis added).
 
 
 7
 Between May 1979 and March 1988, Felice was a steward for M & G Convoy, Inc., a signatory of a collective bargaining agreement with Local 30. In June or July of 1988, Felice was permanently laid off by M & G Convoy due to the closing of the Volkswagen Plant in Westmoreland County, Pennsylvania. After his layoff, he continued to apply for employment in the area and continued to forward his union dues to Local 30. He also requested job referrals from the Union. Despite his efforts, Felice did not obtain a position with an employer having a collective bargaining agreement with Local 30. Finally in July 1989, Felice accepted full time employment with Provide Health Care, Inc., in a non-union job. Local 30 is not party to a collective bargaining agreement with Provide Health Care.
 
 
 8
 On February 20, 1989, Felice received a letter from Local 30 containing an honorable withdrawal card. The letter stated that, because Felice had not worked within the jurisdiction of Local 30[1] for a period in excess of six months,[2] the card was being forwarded pursuant to Article XVIII, Section 6(a), of the IBT Constitution. Felice was also informed that Local 30 would no longer accept his attempts to pay membership dues. Consequently, Felice would not be permitted to hold union office. The honorable withdrawal card allows Felice to regain membership status without paying a second initiation fee once he is reemployed within the Union's jurisdiction.
 
 
 9
 The elected officers of Local 30 include the president, vice-president, secretary-treasurer, recording secretary and three trustees. Elections are held every three years. Felice sought to run for the office of trustee in Local 30's October 1990 scheduled election. Uncertain of his status, in June 1990 he asked the Union's secretary-treasurer for a written determination of his eligibility to be a candidate. The secretary-treasurer replied that Felice was ineligible to run for elected office in the Union because he had been issued a withdrawal card and did not meet the eligibility requirements of Article II, Section 4(a)(1), of the IBT Constitution, governing a member's qualification to run for office.[3]
 
 
 10
 Felice appealed Local 30's negative decision to the IBT general president. The general president denied the appeal. On July 23, 1990, Felice filed a complaint with the Department of Labor ("Department") alleging that he had exhausted his internal remedies and that both Local 30 and the IBT had improperly determined his ineligibility for union office. The Department advised Felice to file an immediate appeal with the IBT General Executive Board (the "Board") in order to exhaust his internal appeals. The Board received Felice's appeal of the general president's decision on July 30, 1990, and notified Felice that it would review his appeal at its next scheduled meeting.
 
 
 11
 At the September 15, 1990, nominations meeting, Felice was nominated for the position of trustee. Two days later, Local 30 President, Thomas Sever, advised Felice that he was ineligible to run for Local 30 office because he had not met the 24 month continuous good standing requirement set forth in Article II, Section 4(a)(1), of the IBT Constitution.
 
 
 12
 Felice alleges that he formally appealed Local 30's September 17 decision to the general president by letter dated September 20, 1990, wherein he referenced his earlier June appeal to the general president and the denial of that appeal. Felice claims that he did not receive a response from the general president regarding his September 20, 1990, appeal. Local 30, on the other hand, does not acknowledge receiving a protest by Felice dated September 20, 1990. Nevertheless, by letter dated October 17, 1990, from the general secretary of the IBT, Felice was advised that the Board had voted to deny his appeal. He was also advised that the Board had affirmed the propriety of the Union's issuance of the honorable withdrawal card.
 
 
 13
 On November 9, 1990, Felice filed a complaint with the Department, pursuant to 29 U.S.C. Sec. 482(a)(1), protesting the Board's October 17 decision. The Secretary initiated the present suit in the Western District of Pennsylvania on January 8, 1991, under 29 U.S.C. Sec. 482(b).[4] He alleged that Felice was a member in good standing of Local 30 and that the Union's mandatory issuance of a withdrawal card had deprived Felice of a reasonable opportunity to be a candidate for office in violation of section 401(e) of the LMRDA, 29 U.S.C. Sec. 481(e). Section 401(e) provides:
 
 
 14
 [A] reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to ... reasonable qualifications uniformly imposed)....
 
 
 15
 (emphasis added). The Secretary asked the district court to declare the Union's October 1990 trustee election void and to order the Union to conduct a new election under his supervision. 29 U.S.C. Sec. 482(c); Local No. 82, Furniture & Piano Moving v. Crowley, 467 U.S. 526, 540, 104 S.Ct. 2557, 2565, 81 L.Ed.2d 457 (1984).
 
 
 16
 The Secretary and the Union both filed motions for summary judgment. In response to the Secretary's claims, Local 30 argued that Felice was not a member of Local 30 and therefore not a "member in good standing" entitled to protection under the LMRDA; that the membership eligibility requirements were reasonable and did not violate the LMRDA; and that, even if Felice were a member of Local 30, he was not "actively employed at the craft within the jurisdiction" of Local 30 for 24 consecutive months prior to the month of nomination and therefore did not satisfy the election eligibility requirements of Article II, Section 4(a)(1), of the IBT Constitution.
 
 
 17
 The district court adopted the Report and Recommendation of the magistrate judge as its opinion, granted the Secretary's summary judgment motion, and denied Local 30's motion. The Union has timely appealed the district court's order.
 
 II.
 A.
 
 18
 As a preliminary matter, we must determine whether the district court's exercise of jurisdiction over this case was proper. We conduct plenary review of this issue. SeeUniversal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 100 (3d Cir.1981).
 
 
 19
 Section 402(a) of the LMRDA, 29 U.S.C. Sec. 482(a), provides in pertinent part:
 
 
 20
 A member of a labor organization--
 
 
 21
 (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, ...
 
 
 22
 may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481....
 
 
 23
 We decided in Hodgson v. United Steelworkers of Am., 459 F.2d 348 (3d Cir.1972), that "[i]f the individual complainant fails to file a protest with the Secretary within one month of the exhaustion of his union remedies, an action filed in the district court must be dismissed." Id. at 350. The question arises, then, whether Felice had exhausted his internal union remedies within one month before he filed his complaint with the Secretary.
 
 
 24
 Felice filed his complaint with the Secretary on November 9, 1990. The Secretary contends that Felice had exhausted his internal remedies for the purposes of section 402(a) on October 17, 1990, prior to the election, when the IBT general secretary advised Felice of the Board's vote to deny his appeal. By contrast, the Union specifically denies that Felice exhausted his internal remedies in its answer to the Secretary's complaint.[5]
 
 
 25
 The Supreme Court has held that the LMRDA provides for an expeditious, exclusive post-election remedy. SeeCalhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964). That decision reflects Congress' policy preference in section 482(a) against interference with the internal union election procedure. See S.Rep. No. 187, 86th Cong., 1st Sess. 7 (1959), reprinted in 1959 U.S.C.C.A.N. 2318, 2337. Several district courts have concluded on the basis of the Court's language in Calhoon that section 482(a) should be construed as a post -election federal remedy; therefore, invocation of pre -election remedies does not place in motion the statutory timetable. See, e.g.,Wirtz v. H.H. Guy Lodge, No. 872, Railroad Trainmen, 279 F.Supp. 873, 874 (W.D.Pa.1967) ("We can see no other logical conclusion but that the available internal remedies under the constitution and by-laws must be invoked after the election."); Wirtz v. Local 30, Operating Engineers, 242 F.Supp. 631, 633 (S.D.N.Y.1965) ("[A]nything that the complainants did prior to [the election] is of no moment.").
 
 
 26
 Notwithstanding those interpretations, our precedent in Hodgson, supra, provides the distinction that applies to Felice's case. In Hodgson, we found that Wisniewski, the candidate, had not filed a timely complaint with the Secretary because more than 30 days had elapsed since the exhaustion of the Wisniewski's union remedies. Wisniewski sought election to the position of district director of his local union. However, because Wisniewski had secured the nominations of only five, rather than the required eight, local unions within the District, his name did not appear on the ballot. Wisniewski lodged a protest with the secretary-treasurer of the International, alleging violations by the local unions of the International's election manual in securing nominations from the local unions. The International appointed a hearing commission in response that denied Wisniewski's protest. The International's Executive Board subsequently informed Wisniewski that they had adopted the commission's findings.
 
 
 27
 In order to determine whether Wisniewski had "exhausted the remedies available" for the purposes of section 482(a), we announced that "we must examine the International Constitution to determine if avenues were open within the union ... to resolve a protest regarding allegedly improper nominating procedures." 459 F.2d at 350 (emphasis added). We reasoned that it makes no difference in the analysis of exhaustion of internal remedies, vis-a-vis this complainant, if the International Constitution elsewhere provided for post -election appeals for contests other than a nominations dispute (for instance, a "section [that] was intended to make relief available to a member of a local union who, for whatever reason, was either not permitted to vote or was allowed to vote under protest," id. at 351), because the extraneous sections do not offer a remedy for nominations disputes. Therefore, they are inapplicable. See alsoUsery v. Local Div. 1205, Amalgamated Transit Union, 545 F.2d 1300, 1306 (1st Cir.1976) (stating that section 402 commands that the party exhaust the "pertinent" remedies available under the constitution and bylaws of the union).
 
 
 28
 We determined in Hodgson that Article V, Section 6 ("V-6"), of the International Constitution delineated the procedure by which protests concerning nominations would be considered by the union and that Wisniewski had, in fact, followed this procedure. Id. at 350. We decided that "[w]hile never stating specifically that V-6 is the exclusive method for dealing with contested nominations, the International Constitution nowhere else provides for disturbing a nomination qua nomination." Id. at 351. Therefore, we concluded that Wisniewski's pre -election protest sufficiently "exhausted the remedies available" to trigger the statutory requirement. We then went on to determine that no useful purpose is served by construing the statute to require the complainant to lodge a post -election appeal if his complaint is against the nominations process and the union constitution expressly provides a pre-election mechanism to challenge the nominations process. We stated that "Wisniewski's delay in filing until after he had received his third denial from the Union, on May 14, 1969 [post election], could serve no purpose other than to lengthen unnecessarily the time required to resolve any conflict between union procedure and the federal law." 459 F.2d at 352. Moreover, this holding is as sound as it is logical for the reason that sequentially, the nominations process precedes an election; therefore a challenge alleging a flawed nominations procedure should follow the nomination and not the election. Additionally, it does not conflict with the Congressional policy preference of minimal interference with union election procedures, seeante, at 981-82.
 
 
 29
 Similarly, in Felice's case, the IBT Constitution contains a section entitled "Nominations and Election Protests" that stipulates:
 
 
 30
 Any member who desires to challenge a ruling on eligibility to run for office shall appeal, in writing, within forty-eight (48) hours after receipt of the ruling to the General President or his designee, who shall decide such an appeal within seven (7) days after receipt of the protest. The decision of the General President shall be appealable to the General Executive Board pursuant to the provisions of Article VI, Section 2 of the International Constitution.
 
 
 31
 IBT Const., Art. XXII, Section 5(a) (emphasis added). Felice's precise grievance was that both Local 30 and the Board had improperly determined that he was ineligible to run for union office. Given the nature of Felice's grievance and the express, mandatory pre -election method ("shall appeal") of seeking redress of eligibility challenges provided by the IBT Constitution quoted above, we hold that Felice exhausted his remedies available under the IBT Constitution for the purposes of section 482(a) by employing the procedures prescribed in the IBT Constitution.[6] We conclude, therefore, that the district court properly exercised jurisdiction over this case under 29 U.S.C. Sec. 482(b).
 
 B.
 
 32
 Having resolved the exhaustion issue, we must next consider mootness. We requested that the parties submit post-argument briefs addressing whether this matter is moot in light of Felice's loss in the Union's February 1992 special election, held under the Secretary's supervision. We consider questions of mootness under a plenary standard of review. Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 914 (3d Cir.1987).
 
 
 33
 The Supreme Court has ruled that "in the absence of a class action, the 'capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam), citing Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1974). It is clear that Weinstein 's first element is satisfied here. The district court's order granting summary judgment to the Secretary was entered on October 22, 1991. The supervised election was held in February 1992.[7] We heard argument on this appeal on May 15, 1992. In addition, the LMRDA section 402(d), 29 U.S.C. Sec. 482(d), dictates that "an order directing an election shall not be stayed pending an appeal." It is not likely, then, in this case that we could hear and decide the Union's appeal before any supervised election is conducted. SeeMarshall v. Local Union 20, Int'l Bhd. of Teamsters, 611 F.2d 645, 648 (6th Cir.1979) ("It is unlikely under these circumstances that this court could hear and decide an appeal before any re-run election."); Usery v. IOMM & P, 538 F.2d 946, 952 n. 10 (2d Cir.1976) ("We assume that, if an appeal is taken by the Union, it probably cannot be disposed of finally before ballots are made up for a [court ordered supervised] election."); Brennan v. Silvergate District Lodge No. 50, Int'l Assoc. of Machinists & Aerospace Workers, 503 F.2d 800, 804 (9th Cir.1974) (recognizing that the intervening Secretary's supervised election conducted before argument on appeal is "the result of the inevitable delays that arise from litigation. The Supreme Court has been most reluctant to allow intervening elections to moot properly raised issues."). Therefore, a district court ordered re-election will likely be executed before we could conduct our review.
 
 
 34
 Weinstein 's second element is also satisfied here.[8] At oral argument and in her post argument brief, the Secretary admitted that, since the supervised election, Mr. Felice has continued to submit union dues and has continued to attempt to attend union membership meetings. However, the Union has continued to regard Felice as a non-member and consequently ineligible to run for office pursuant to its withdrawal card rule. The Secretary asserts that these facts demonstrate Felice's desire to seek union office in the next scheduled election. However, the Union's mandatory six month withdrawal card rule remains a part of its constitution. Given these facts, we conclude that there is a "reasonable expectation" that should Felice attempt to run for union office in the next election, he once again would be deemed ineligible by operation of the rule.
 
 
 35
 Moreover, the issue presented is capable of repetition vis-a-vis Felice, even if he has obtained "covered employment"[9] before the next election. In that event, Felice would still be barred from seeking union office because the IBT Constitution requires candidates for office in the Union to be members in "continuous good standing"[10] during the 24 consecutive months prior to the election. Art. II, Section 4(a)(1); App. at 25. Local 30's issuance of the withdrawal card to Felice terminated his good standing. Therefore, in the next scheduled election, Felice will be in the same position in which he is currently. Any challenge he would bring in district court to his certain disqualification from candidacy for union office would similarly evade our review.
 
 
 36
 The Supreme Court recently applied the "capable of repetition yet evading review" doctrine to defeat mootness in IOMM & P v. Brown, 498 U.S. 466, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991), a case factually similar to this one. In Brown, a candidate for union office sought access to a union membership mailing list in order to send members campaign literature at his own cost. Because a union rule prohibited any preconvention mailings, the union denied his request. The candidate sued the union for violating the LMRDA. On appeal, the Court held that:
 
 
 37
 [E]ven though respondent's campaign literature has been distributed and even though he lost the election by a small margin, the case is not moot. Respondent has run for office before and may well do so again. The likelihood that the Union's rule would again present an obstacle to a preconvention mailing by respondent makes this controversy sufficiently capable of repetition to preserve our jurisdiction.
 
 
 38
 498 U.S. at 473, 111 S.Ct. at 885 (footnote and citations omitted).
 
 
 39
 For the foregoing reasons, we conclude that this case is not moot because the issue presented is capable of repetition yet evading review. This court's jurisdiction is invoked under 29 U.S.C. Sec. 482(d) and 28 U.S.C. Sec. 1291.
 
 C.
 
 40
 Having resolved the jurisdictional questions, we now turn to the merits. The district court held that Local 30's six-month mandatory withdrawal rule is not a reasonable qualification under section 401(e) of the LMRDA and granted summary judgment in favor of the Secretary. We conduct a de novo review of the evidence that the parties presented before the district court. We also apply the same standards applicable to the district court. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1530 (3d Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).
 
 
 41
 The issue we must decide on the merits is whether it is reasonable, under the LMRDA, for the IBT to incorporate into its bylaws the six month unemployment limitation. Article II, Section 4(a)(1), of the IBT Constitution limits eligibility for candidacy in union elections to members in "continuous good standing," e.g., members who have not received, or who are not subject to receiving, a withdrawal card due to six months unemployment. If this six month unemployment limitation on eligibility is not a "reasonable qualification," the IBT Constitution violates section 401(e) of the LMRDA.[11]
 
 
 42
 In interpreting section 401(e), our first task is to attempt to determine Congressional intent by analyzing "traditional tools of statutory construction." If we can do so, we must give effect to that interpretation and the relevant regulations must be consistent with it. I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 446-48, 107 S.Ct. 1207, 1221-22, 94 L.Ed.2d 434 (1987); see alsoChevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, and n. 9, 104 S.Ct. 2778, 2781-82, and n. 9, 81 L.Ed.2d 694 (1984). However, where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782. We find that the statutory language, "reasonable qualification," is ambiguous.
 
 
 43
 The Secretary of Labor, who has primary responsibility for the administration of Title IV of the LMRDA,[12] has promulgated regulations interpreting Title IV in 29 C.F.R. Sec. 452.1 et seq. (1992). 29 C.F.R. Sec. 452.41 provides:
 
 
 44
 (a) It would ordinarily be reasonable for a union to require candidates to be employed at the trade or even to have been so employed for a reasonable period. In applying such a rule an unemployed member is considered to be working at the trade if he is actively seeking such employment. Such a requirement should not be so inflexible as to disqualify those members who are familiar with the trade but who because of illness, economic conditions, or other good reasons are temporarily not working.
 
 
 45
 (b) It would be unreasonable for a union to prevent a person from continuing his membership rights on the basis of failure to meet a qualification which the union itself arbitrarily prevents the member from satisfying. If a member is willing and able to pay his union dues to maintain his good standing and his right to run for office, it would be unreasonable for the union to refuse to accept such dues merely because the person is temporarily unemployed. Where a union constitution requires applicants for membership to be actively employed in the industry served by the union, a person who becomes a member would not be considered to forfeit his membership in the union or any of the attendant rights of membership merely because he is discharged or laid off.
 
 
 46
 (emphasis added). The magistrate judge noted that "Local 30's qualification is inconsistent with the Secretary's interpretive regulations" and concluded that "it would appear that Local 30's withdrawal rule is not a reasonable qualification under the Act."
 
 
 47
 Relying solely on this regulation, the Secretary contends that the Union rules should not operate to disqualify Felice, an employee familiar with the trade but unable because of circumstances beyond his control to find "covered employment." She further argues that any qualification requiring continuous employment for any period prior to, or actual employment at the time of, nomination which does not accommodate the regulation's concern for the rights of unemployed or discharged members is unreasonable and violates section 401(e). Finally, the Secretary urges that the Union's withdrawal card rule conflicts with the LMRDA's goals of protecting the rights of the rank and file, ensuring free and democratic elections, and preventing restrictive union election practices which unfairly perpetuate entrenched union leadership. SeeWirtz v. Hotel Employees, Local 6, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968); Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 845 (1960).
 
 
 48
 The Union contends in response that its six month withdrawal card rule is reasonable under the LMRDA because it is designed to strike a balance between the concerns over disenfranchising temporarily unemployed persons and the Union's right to restrict its membership to persons directly affected by the actions of the Union. The Union provides this example in support of the withdrawal card rule: In general, non-union workers would most likely benefit from a strike by a union employer competitor. If those who are unemployed for more than six months are not issued withdrawal cards, persons running for union office would be required to seek support from persons who are not employed in the craft and whose interest may be directly contrary to employees who are employed in the craft. This result is undesirable because Union officials charged with the responsibility of serving the interests of their members, such as a trustee[13] (the office that Felice seeks), should not be faced with conflicting pressures. The Union asserts that the Union official's fiduciary obligation and loyalty should be to employees who are working under union contracts and that six months is a reasonable time period to allow a member who is terminated to obtain "covered employment" in order to retain his member status.
 
 
 49
 The Supreme Court has indicated that the test of reasonableness under Title IV of the Act is a balance between the "anti-democratic effects" of the challenged rule and the "[union] interests urged in its support." United Steelworkers v. Usery, 429 U.S. 305, 310, 97 S.Ct. 611, 615, 50 L.Ed.2d 502 (1977).
 
 
 50
 In resolving this argument, we note first of all that section 452.41 of the regulations does not define "temporarily unemployed."[14] In order to apply the regulation to its employees, the IBT Constitution defines "temporarily unemployed" as a period of time not greater than six months. Our task is to determine whether this six month's unemployment limitation, which in turn governs eligibility to run for union office, is a reasonable qualification. In determining whether a particular labor union rule is reasonable, courts generally gauge "all the circumstances of the particular case," including the ease of meeting the qualification and the number of members excluded by the operation of the rule in question. Local 3489, United Steelworkers of Am. v. Usery, 429 U.S. 305, 313, 97 S.Ct. 611, 616, 50 L.Ed.2d 502 (1977); Usery v. Local Div. 1205, Amalgamated Transit Union, 545 F.2d 1300, 1303 (1st Cir.1976) (noting that "the question is not only how many were disqualified but how burdensome was the qualification."). "The critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." Steelworkers v. Sadlowski, 457 U.S. 102, 112, 102 S.Ct. 2339, 2346, 72 L.Ed.2d 707 (1982); see also,Wirtz v. Hotel Employees, Local 6, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968) ("[W]hether the ... bylaw is a 'reasonable qualification' within the meaning of section 401(e) must be measured in terms of its consistency with the Act's command to unions to conduct 'free and democratic' union elections.").
 
 
 51
 Wirtz v. Hotel Employees, Local 6 provides one example of an unduly restrictive candidacy qualification which could "result in the abuses of entrenched leadership that the [LMRDA] was expressly enacted to curb." 391 U.S. at 499, 88 S.Ct. at 1748. As the court stated there, "[t]he check of democratic elections as a preventative measure is seriously impaired by candidacy qualifications which substantially deplete the ranks of those who might run in opposition to incumbents." Id. (emphasis added).
 
 
 52
 The particular qualification at issue in Wirtz v. Hotel Employees, Local 6, a union bylaw limiting eligibility for major elective offices to members who held or had previously held elective office, excluded all but six or seven percent of the union's membership from the pool of potential candidates. The Supreme Court, consequently, held this qualification unreasonable:
 
 
 53
 Plainly, given the objective of Title IV, a candidacy limitation which renders 93% of union members ineligible for office can hardly be a "reasonable qualification."
 
 
 54
 Id. at 502, 88 S.Ct. at 1749. Similarly, in Local 3489, United Steelworkers of Am. v. Usery, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), the Court struck down as unreasonable a meeting-attendance qualification that made more than 96 percent of the union's members ineligible to hold office. See, e.g.,Doyle v. Brock, 821 F.2d 778, 784 (D.C.Cir.1987) (holding an attendance rule unreasonable where 97% of membership was excluded); Marshall v. Local 1402, Int'l Longshoremen's Ass'n, 617 F.2d 96 (5th Cir.) (holding meeting requirement unreasonable where 93.7% membership excluded), cert. denied, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980).
 
 
 55
 A tension between union interests and candidate qualifications, comparable to this case, occurred in Martin v. Branch 419, Nat'l Ass'n of Letter Carriers, 965 F.2d 61 (6th Cir.1992). The National Association of Letter Carriers, a labor union subject to the LMRDA, had constitutional provisions stating that "any member who 'holds, accepts, or applies for a supervisory position in the Postal Career Service' is ineligible to run for office until two years have elapsed." 965 F.2d at 62 (emphasis added). Regulations adopted by the Secretary of Labor provided that "supervisors ... may not be candidates for or hold [union] office." 29 C.F.R. Sec. 452.47. The question presented in the appeal was whether it was reasonable for a union to disqualify members from running for union office merely because they were aspiring supervisors. The Secretary maintained that it is unreasonably restrictive to require that a candidate for union office must not have applied for a supervisory position within two years; the union defended its qualification as a reasonable means of guarding against actual and potential conflicts of interest.
 
 
 56
 The Sixth Circuit concluded that the qualification was reasonable and it reversed the summary judgment entered by the district court in favor of the Secretary. The court noted that "[w]here a union adopts a qualification for office that may reflect a conflict between the interest of rank-and-file union members in participating fully in the operation of their union and the interest of an entrenched union leadership in perpetuating its own control, the [LMRDA's] phrase 'reasonable qualifications uniformly imposed' should be interpreted, if possible, in such a way as to vindicate the former interest in preference to the latter." 965 F.2d at 64.
 
 
 57
 In Nat'l Ass'n of Letter Carriers, the court observed that, in contrast to situations such as existed in Wirtz v. Hotel Employees, Local 6, "the Secretary does not contend that more than a small percentage of union members are barred from office by reason of the qualification...." 965 F.2d at 65. Thus, when the court weighed the Secretary's evidence of the relatively small percentage of union members adversely affected by the qualification against the union's stated concern that union members who had applied for supervisory positions created a conflict of interest,[15] it determined that the union's qualification was reasonable. The court concluded that, although the Congressional authorization of "reasonable qualifications uniformly imposed" should not be given a broad reach, Wirtz v. Hotel Employees, Local 6, 391 U.S. at 499, 88 S.Ct. at 1748, the LMRDA "does not render unions powerless to restrict candidacies for office." Local 3489 v. Usery, 429 U.S. at 308, 97 S.Ct. at 614.
 
 
 58
 The Sixth Circuit's application of the test, balancing the interests between the union and the Secretary, is instructional on the question of the legal sufficiency of the evidence of a reasonable qualification. We find additional support for the weight to be given to the interests of those working in covered employment in the case of Williams v. Int'l Typographical Union, 423 F.2d 1295 (10th Cir.), cert. denied, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970) where the Tenth Circuit held that barring a member classified as "not working at the trade" from voting on wage scales did not violate the LMRDA. The court found the restriction was reasonable because of the evidence presented by the Unions "that those not primarily dependent on the printing business for their livelihood ... do not have the vital interest in wage scales which is present in those who are first and foremost printers." Id. at 1298.
 
 
 59
 In conducting our balance here, we note that the Secretary acknowledged at oral argument that there is no evidence in the record of the percentage of Local 30 members who lost their membership as a result of being issued an honorary withdrawal card. For all we know, Mr. Felice is the only member thus far to be adversely affected by the rule.
 
 
 60
 The Secretary neither contends nor introduces legally sufficient evidence that Local 30's six month mandatory withdrawal card rule will substantially deplete the ranks of those eligible to run for office. SeeWirtz v. Hotel Employees, Local 6, 391 U.S. at 499, 88 S.Ct. at 1748. Rather, the Secretary maintains that the rule is unreasonable because it violates the Department regulation mandating continued membership status for employees, like Felice, who become "temporarily unemployed" through no fault of their own. The magistrate judge reported that Local 30's "restriction on candidate eligibility does not appear to be consistent with the Act's purpose of protecting the rights of the rank and file and ensuring free and democratic union elections." App. at 319. The district court adopted the magistrate's report and recommendation as its opinion.
 
 
 61
 We find it significant, however, that the Union rule is not inconsistent with the Department regulation; it merely goes further than the Department regulation to define "temporarily unemployed" as no longer than six months. Once an employee remains out of "covered work" for a period of time greater than six months, the Union considers that employee to be permanently unemployed. The Union's justification for the rule, i.e. protecting the interests of members working under union contracts, is a legitimate one. The Union's approach seems reasonable under the LMRDA and the Secretary has provided no evidence to the contrary. For this reason we hold that the balance tips in favor of the Union's position.
 
 III.
 
 62
 We find that the Secretary is not entitled to judgment as a matter of law that Local 30's qualification is not reasonable under the Act. Therefore, we will reverse the judgment of the district court and will remand with instructions to enter judgment in favor of Local 30.
 
 
 
 [1]
 The jurisdiction of Local 30 consists of employers who are parties to a collective bargaining agreement with the IBT. See IBT Const., Art. I, Section 2; Art. II, Section 1(a); App. at 22-23
 
 
 [2]
 Local 30's Bylaws, Article 5, Section 5.8, states that a member not actively working under the jurisdiction of the union for a period of "(1) one year or more must take an honorable withdrawal card." The bylaw's inconsistency with the IBT Constitution's six month time period is preempted by the IBT Constitution. See IBT Const., Art. XVIII, Section 6(a). Therefore, six months after a member is unemployed is the relevant time measurement to issue honorable withdrawal cards
 
 
 [3]
 Article II, Section 4(a)(1), provides that in order "[t]o be eligible for election to any office in a Local Union, a member must be in continuous good standing in the Local Union in which he is a member and in which he is seeking office, and actively employed at the craft within the jurisdiction of such Local Union, for a period of twenty-four (24) consecutive months prior to the month of nomination for said office.... 'Continuous good standing' means ... no interruptions in active membership in the Local Union for which office is sought because of suspensions, expulsions, withdrawals, transfers or failure to pay fines or assessments." (emphasis added)
 
 
 [4]
 Section 482(b) provides that:
 The Secretary shall investigate [a union member's] complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court....
 
 
 [5]
 Counsel for the Union asserted at oral argument that he did not raise this issue on appeal because the Union desired a ruling on the merits. However, as this question addresses the subject matter jurisdiction of the district court, Hodgson, 459 F.2d at 350, Article III of the U.S. Constitution limits the subject matter jurisdiction of the federal courts and parties cannot confer subject matter jurisdiction on a federal court by consent. California v. LaRue, 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); Bouton v. Government of the Virgin Islands, 987 F.2d 162, 168 (3d Cir.1993). Moreover, we requested pre-argument supplemental briefs from the parties on this issue and counsel for the Union argued in reply that the district court did not have jurisdiction over this case because Felice did not exhaust his internal union remedies: "[T]he IBT Constitution provides for a post-election grievance machinery and Felice did not initiate an internal union protest of the election." Appellant's Post Argument Br. at 4
 
 
 [6]
 For the reasons discussed in Hodgson, seeante, at 982, it is irrelevant to our determination that Felice exhausted his internal remedies relating to his eligibility challenge that the IBT Constitution contains a post-election mechanism to resolve elections protests, to wit:
 In the event there shall be any protest or charge by any member concerning the conduct of the election after the election has been held, such protest or charge shall be made in writing by such member within seventy-two (72) hours setting forth the exact nature and specifications of the protest and his claim as to how it has affected the outcome of the election.
 IBT Const., Art. XXII, Section 5(b).
 A further factor which demonstrates the inappropriate nature of a post-election internal appeal of a nominations challenge is found in the IBT Constitution. Pursuant to the constitution, a different initial body is authorized to settle a pre-election nominations dispute (the IBT General President), than to resolve a post-election dispute (the Secretary-Treasurer of the Local Union's Joint Council). Since the Secretary-Treasurer of the Joint Council is apparently not authorized to settle a nominations dispute, it serves no useful purpose for us to require Felice to invoke the IBT Constitution's post-election procedure in order to satisfy section 482(a)'s requirement. SeeHodgson, 459 F.2d at 351 ("There is no indication in the International Constitution ... that the Tellers did or could consider nomination disputes.").
 
 
 [7]
 Felice lost in the election
 
 
 [8]
 See, e.g.,Honig v. Doe, 484 U.S. 305, 318 n. 6, 108 S.Ct. 592, 601 n. 6, 98 L.Ed.2d 686 (1988) ("[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur[.]") (quoting Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). The Court noted that "in numerous cases decided both before and since Hunt we have found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable." Honig, 484 U.S. at 318 n. 6, 108 S.Ct. at 601 n. 6 (citations omitted)
 
 
 [9]
 "Covered employment" is defined in Local 30's Bylaws as "[a]ny person of good moral character employed in the craft or of the various employments over which this Local Union has jurisdiction shall be eligible to membership in this organization ..." Local 30 Const., Art. V, Section 5.1
 
 
 [10]
 "Continuous good standing" means compliance with the provisions of Article X, Section 5, concerning the payment of dues ... together with no interruptions in active membership in the Local Union for which office is sought because of suspensions, expulsions, withdrawals, transfers or failure to pay fines or assessments. IBT Const., Art. II, Section 4(a)(1) (emphasis added)
 
 
 [11]
 The LMRDA section 401(e), 29 U.S.C. Sec. 481(e), provides in pertinent part:
 (e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed).... (emphasis added).
 
 
 [12]
 Any union member who alleges a violation of Title IV may initiate the enforcement procedure. He must first exhaust any internal remedies available under the constitution and bylaws of her union. Then he may file a complaint with the Secretary of Labor, who shall investigate the complaint. Finally, if the Secretary finds probable cause to believe a violation has occurred, the Secretary shall bring a civil action in federal district court against the labor organization to set aside the election if it has already been held and to direct and supervise a new election
 
 
 [13]
 Counsel for the Union points out that trustees exercise discretionary authority to determine the terms and conditions under which the union members will strike, see Int'l Const., Art. XII, Section 1(b), and issues connected with wage scale negotiations for its members, see Int'l Const., Art. II, Section 2(d). A member not working for an employer under a collective bargaining agreement with the Union would not be affected by such wage negotiations and might potentially be in conflict with the strike and wages issues if the non-union employer is a competitor
 
 
 [14]
 There is an issue of the proper deference to accord the Secretary's regulation. CompareSkidmore v. Swift & Co., 323 U.S. 134, 137-40, 65 S.Ct. 161, 163-64, 89 L.Ed. 124 (1944) (where Congress did not delegate interpretive authority to the agency, its findings may be persuasive but are not controlling); General Elec. Co. v. Gilbert, 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976) (EEOC interpretations of Title VII given less deference because it lacks authority to promulgate rules and regulations pursuant to that statute); withChevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("[i]f ... Congress has not directly addressed the precise question at issue," courts should accept reasonable administrative interpretations of law)
 We have previously declined to decide whether Chevron deference is appropriate with respect to interpretative regulations as opposed to legislative rules. See Int'l Raw Materials v. Stauffer Chemical, 978 F.2d 1318, 1325 n. 9 (3d Cir.1992). We need not decide that issue in order to resolve this case; therefore, we will decline here too. However, we do make these observations. Neither Skidmore nor Gilbert has been expressly overruled. Secondly, in Adams Fruit Co. v. Barrett, 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990), a post Chevron decision, the Court suggested that a "precondition to deference under Chevron is a Congressional delegation of administrative authority." 494 U.S. at 1390, 110 S.Ct. at 1390. In Adams Fruit, the Court noted that "even if [the Act's] language establishing a private right of action is ambiguous, we need not defer to the Secretary's view of the scope of Sec. 1854 because Congress has expressly established the Judiciary and not the Department of Labor as the adjudicator of private rights of action arising under the statute." Id. The Court acknowledged that "Congress clearly envisioned, indeed expressly mandated, a role for the Department of Labor in administering the statute by requiring the Secretary to promulgate standards implementing [the Act's] provisions. This delegation, however, does not empower the Secretary to regulate the scope of the judicial power vested by the statute." Adams Fruit, 494 U.S. at 650, 110 S.Ct. at 1391.
 On the other hand, assuming, arguendo, that the Secretary's regulation in this case is entitled to Chevron deference, the regulation would not support the Secretary's position here. Because it does not define "temporarily unemployed," the regulation is ambiguous and its application is therefore arbitrary. As Justice Scalia stressed, "deference is not abdication, and it requires us to accept only those agency interpretations that are reasonable in light of the principles of construction courts normally employ." E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244, 260, 111 S.Ct. 1227, 1237, 113 L.Ed.2d 274 (1991).
 
 
 [15]
 The conflict of interest is created by an application for a supervisory position when, in order to curry favor with the supervisor, the member is overly cooperative in a case of a grievance, where a grievant may have been suspended, and makes a settlement that was unfavorable to the grievant. In NLRB v. U.S. Postal Service, 841 F.2d 141 (6th Cir.1988), the court suggested that prophylactic measures such as the union's qualification on eligibility for office were supported by "the need to assure the complete devotion of union negotiating teams to employee interests...." Id. at 145, quoting Mon River Towing, Inc. v. NLRB, 421 F.2d 1, 8 (3d Cir.1969). Characterizing as "reasonable" the NLRB's determination that a "clear potential for conflict of interest problems" existed, the court explained that "[t]he desire for supervisor approval is likely to affect a union official's ability to represent the employees' interests when the positions are adverse. Conflict of interest problems are difficult to detect by their very nature, and thus, necessitate preventive measures." U.S. Postal Service, 841 F.2d at 145-46