**Ali Z. HAMELI, M.D., Plaintiff,**

v.

**Carmen R. NAZARIO, individually and in her official capacity, and Thomas Lofaro, individually and in his official capacity, Defendants.**

**Civil Action No. 94–199–SLR.**

United States District Court,
D. Delaware.

June 26, 1996.

Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, for plaintiff.

Marsha Kramarck, Deputy Attorney General, State of Delaware, Department of Justice, Wilmington, Delaware, for defendants.

## OPINION

SUE L. ROBINSON, District Judge.

## I. INTRODUCTION

This case[1] gives new meaning to the adage that no good deed goes unpunished. The suit was originally filed in April 1994 after plaintiff, Ali Z. Hameli, M.D., was dismissed from his position as the Chief Medical Examiner for the State of Delaware. Plaintiff's discharge followed allegations of sexual harassment made against him by two former employees of the Medical Examiner's Office. In his complaint against defendants Carmen R. Nazario, the Delaware Secretary of Health and Human Services, and Thomas LoFaro, the Delaware Deputy Director for Labor Relations, plaintiff claimed that defendants had violated his substantive and procedural due process rights, maliciously interfered with his contractual rights, intentionally inflicted emotional distress, and in-

1. As noted by a magistrate judge in another judicial district.

vaded his privacy. (D.I. 19)[2] On September 2, 1994 this court found that defendants had not given plaintiff an adequate opportunity to be heard as required by the Due Process Clause of the Constitution. (D.I. 54) Accordingly, the court ordered that plaintiff be reinstated and given "a meaningful opportunity to be heard in a meaningful manner at a hearing...." (D.I. 55)

While this court's decision was pending, a magistrate judge, as directed by the court, had scheduled a meeting with the parties in an attempt to facilitate a settlement. After the court issued its order requiring that plaintiff have a hearing before an impartial decision maker, plaintiff urged defendants to request that the magistrate judge in charge of facilitating settlement serve as the hearing officer. Defendants agreed. Although the type of hearing requested would ordinarily be conducted by a state hearing officer and was outside the realm of a federal magistrate judge's normal duties, the magistrate judge graciously accepted the additional work, as requested by the parties. The parties stipulated that the magistrate judge's findings of law and fact on the issue of whether the state had cause to fire plaintiff would be final and unappealable. (D.I. 125 at A–28)

After innumerable hours of testimony, the magistrate judge rendered a 115–page opinion detailing the evidence and stating her factual and legal conclusions. Defendants, despite their agreement not to appeal, filed the present motion in this court to vacate the magistrate judge's decision. (D.I. 119) Defendants have advanced several grounds for vacating the opinion, most of which concern their disagreement on the merits as to the magistrate judge's application of the relevant law, her conclusions of fact, and her recommendations concerning discipline. More troubling are defendants' contentions that the magistrate judge somehow forced the state to agree to a binding, unappealable decisionmaking process and that, regardless of whether the state agreed, the magistrate judge never had the authority to determine disciplinary measures. Such authority, defendants contend, is vested solely in the Secretary and may not be delegated. In response, plaintiff argues that defendants voluntarily agreed to be bound by the magistrate judge's decision and should be estopped from claiming, at this late date, that they did not or could not agree to be so bound. Plaintiff also contends that the magistrate judge's role in the decision making process is consistent with the duties of a federal magistrate judge and should be left undisturbed.

For the reasons stated below, defendants' motion shall be granted.

## II. BACKGROUND

### A. Factual Background of Plaintiff's Suit in Federal District Court [3]

Plaintiff was first hired by the State of Delaware as its Chief Medical Examiner in 1964. (D.I. 98 at 2) In 1970, plaintiff was appointed to a ten-year term as Chief Medical Examiner, in accordance with Delaware law, which states that "The Secretary [of the Department of Health and Social Services] may ... [a]ppoint, with the written approval of the Governor, an administrator and head of the Office of Medical Examiner who shall be known as the Medical Examiner of the

2. Plaintiff originally named the State of Delaware as a defendant as well. On May 27, 1994, the court signed a stipulated order dismissing plaintiff's only count against the State without prejudice. The same order gave plaintiff leave to file an amended complaint. (D.I. 14) Since that order was issued, plaintiff has not listed the State of Delaware as a defendant in the caption of any of the papers he has submitted to the court, nor does his most recent amended complaint list any new counts against the State. (D.I. 98) The amended complaint does, however, refer several times to "defendant State of Delaware," and includes a paragraph identifying the State in the section of the complaint that identifies the parties. (D.I. 98) Despite these apparent inconsis-

tencies, the court will assume that the State of Delaware is no longer a party to this case.

3. The factual circumstances leading to the filing of this suit are drawn largely from plaintiff's first amended complaint (D.I. 19), defendants' answer (D.I. 24), and the parties' briefs on defendants' motion to dismiss (D.I. 8) and plaintiff's motion for partial summary judgment (D.I. 15). Plaintiff's second amended complaint (D.I. 98) filed on December 12, 1994, and defendants' answer thereto (D.I. 100), present a less complete, but not substantially different, view of the underlying facts.

State for a term of 10 years, subject to reappointment, but always subject to removal for cause." 29 Del.Code § 7903. Plaintiff was reappointed in 1980 and again in 1990. (D.I. 98 at 2–3)

In October of 1993, Mary Smith [4], a former employee of the State in the Office of the Medical Examiner, alleged that plaintiff had sexually harassed her during her employ. (D.I. 9 at 3) Smith stated these allegations during her exit interview. Smith did not file her claim with the State pursuant to its official grievance procedures policy. Defendant Nazario, however, was informed of these complaints. At the same time, Wayne Bergner, Director of the Division of Management Services, requested that the State Personnel Office investigate the claim through defendant LoFaro.

On November 1, 1993, Smith filed an official complaint with the Department of Labor. (D.I. 98 at 3) The State assigned Deputy Attorney General Loretta LeBar to represent the State and plaintiff in the administrative charge. (D.I. 16 at 6) Plaintiff worked with LeBar to complete a questionnaire sent by the Delaware Department of Labor with the discrimination charge. (D.I. 16 at 6) Meanwhile, defendant LoFaro assigned Michael Reynolds, a labor relations specialist, to interview Smith. (D.I. 9 at 4) Plaintiff was made aware of this independent investigation on February 25, 1994. (D.I. 16 at 7)

On March 2, 1994, LoFaro interviewed another former employee of the Office of the Medical Examiner, Jane Doe. She also claimed that plaintiff sexually harassed her. (D.I. 9 at 5) Defendants claim that LoFaro also interviewed Dr. Laposata [5] who allegedly stated that Smith and Doe had complained to her about plaintiff's conduct. (D.I. 9 at 6) Reynolds and defendant LoFaro interviewed plaintiff personally on March 4, 1994. (D.I. 98 at 5)

On March 7, 1994, Nazario met with investigators and discussed the accusations against plaintiff, plaintiff's response, and the credibility of those interviewed. (D.I. 10 at Ex. 2) She concluded that cause existed to terminate plaintiff. (D.I. 10 at Ex. 2) On March 10, 1994, LeBar informed plaintiff that the State would no longer represent him due to a perceived conflict of interest. (D.I. 98 at 5)

On March 22, 1994, defendant LoFaro met again with plaintiff and his counsel. (D.I. 98 at 5) At that meeting, defendant LoFaro informed plaintiff that a second former employee, Jane Doe, had come forward with allegations of sexual harassment against him. These allegations were similar in detail to those which Mary Smith had made earlier. (D.I. 98 at 5; D.I. 100 at 5) LoFaro provided plaintiff with details about the allegations against him, specifically reading aloud from diary entries allegedly recorded by Smith and Doe which detailed accounts of sexual harassment. (D.I. 10 at ¶ 15; D.I. 16 at 10) He informed plaintiff that he was prepared to begin termination proceedings against him. He suggested plaintiff's resignation as an alternative to termination. Said resignation was subject to several conditions which included psychiatric counseling, indemnification by plaintiff to the State, creation of an escrow account with a $150,000 deposit by plaintiff, and an agreement by plaintiff to testify on behalf of the State without payment of expert witness fees. (D.I. 10 at Ex. 3, ¶ 17) LoFaro also mentioned the possibility of criminal charges. (D.I. 10 at Ex. 3, ¶ 18) Plaintiff proposed the possible idea of retirement and LoFaro did not dismiss this option. (D.I. 10 at Ex. 3, ¶ 20)

In a letter dated March 29, 1994, plaintiff notified defendant Nazario of his intention to retire on June 30, 1994. (D.I. 7 at Ex. C) Also on March 29, 1994, plaintiff's counsel sent a letter to LoFaro informing him of

---

4. The pseudonyms Mary Smith and Jane Doe have been used throughout the history of this case. Although some of the documents in the case file mention the actual names of the two women, and plaintiff is aware of their true identities, the court sees no reason to stop using the pseudonyms at this point.

5. Plaintiff had disciplined Dr. Laposata in the summer of 1993 for insubordination. (D.I. 16 at 9, fn. 3) On April 7, 1994, one day after the State terminated plaintiff's employment, the State expunged Dr. Laposata's suspension from her record and awarded her back pay. (D.I. 125 at A–3)

plaintiff's retirement letter, strongly encouraging him to halt administrative procedures against his client, advising him that plaintiff would not accept the conditions offered by the State, and challenging the veracity of the charges. (D.I. 17 at A26–30) On that same date, Nazario sent a letter to plaintiff informing him of the reasons for the proposal to terminate him and providing him with a sampling of incidents underlying the charges. She also informed plaintiff that he might request a pre-termination hearing by contacting LoFaro by April 5, 1994. The letter specified that "such a hearing would be informal, and provide you with an opportunity to respond to these charges and/or offer any reasons why the proposed penalty is not warranted. If you fail to do so we will proceed based on the information in our possession." (D.I. 17 at A31–33)

Two days later, plaintiff's counsel sent a letter to LoFaro requesting more time to respond to Nazario's letter because April 1 was a holiday, Good Friday, and plaintiff would be in California for a previously approved vacation. Counsel also asked for more specific information about the pre- and post-termination proceedings offered to plaintiff. (D.I. 17 at A34–35)

On April 4, 1994, LoFaro responded to both of counsel's previous letters in separate letters. (D.I. 17 at A36, 39) In response to plaintiff's March 31st letter, LoFaro informed plaintiff that on March 22nd plaintiff received a full compendium of the statements Smith and Doe alleged he had made. LoFaro also listed specifically the statements which would be relied upon by the investigators, their content, and date of occurrence. LoFaro denied plaintiff's request for an extension, stating that counsel "will have sufficient time by tomorrow to simply let me know whether you desire another opportunity to state his [plaintiff's] position, i.e., via a termination hearing." (D.I. 17 at A52) LoFaro described the hearing as follows:

> [I]t will be **informal**. . . . [I]t will **neither be transcribed nor witnesses sworn. Rules of evidence will not apply.** It is simply an opportunity for your client to respond to the specific charges in any reasonable manner he chooses, and/or contest the penalty proposed. . . . You may make a response on his behalf, but **he must answer any questions asked of him by the hearing officer or employer representative.**
>
> Even though the **parties may question each other and a reasonable give and take is permissible, cross examination of any individuals present shall not be permitted.** As the very nature of this proceeding indicates, the **employer is not required to prove or even present its case;** rather, it represents an opportunity for the charged individual to respond to the specified charges before the employer makes a final decision.
>
> With respect to witnesses, consistent with the above outline, the **State will not have any.** You may have your client testify, and you may also bring a reasonable number of individuals who have something directly relevant to offer about this matter.
> . . . .
> Finally, **no administrative post-termination process is required in this case, and none will be offered.**
> . . . .
> I **do not know who would act as the hearing officer.** In the meantime it is imperative that you provide me with an early hearing date availability so that it **can be held** by April 15.

(D.I. 17 at A52–53) (emphasis added). Plaintiff's counsel responded by letter stating that such a procedure was deficient and that plaintiff was withdrawing his retirement letter. (D.I. 17 at A56, 57) On April 6, 1994, Nazario discharged plaintiff by letter. (D.I. 17 at A58–59) On the following day, the Department of Health and Social Services, through its attorney, notified the Department of Labor that it wished to pursue a "no fault" settlement with the former employee who had filed the initial harassment charge. (D.I. 125 at A–2)

**B. Procedural Background and Events Relating to Plaintiff's Termination Hearing**

In response to his dismissal, plaintiff filed suit in this court on April 19, 1994. (D.I. 1) On May 9, 1994, defendants filed their an-

swer along with a motion to dismiss. (D.I. 7, 8) Plaintiff then filed a motion for partial summary judgment in which he contended that defendants' failure to provide him with a post-termination hearing or an adequate pre-termination hearing violated his procedural due process right. (D.I. 16)

While these motions were pending, counsel for the parties continued to discuss the possibility of a post-termination hearing. Letters exchanged during this period indicate that obtaining a hearing before an impartial hearing officer was plaintiff's paramount concern. (D.I. 125 at 2–4, A4, A7)

On June 29, 1994, counsel met with the court for a scheduling conference. As is the practice of this court, the court asked whether counsel thought it would be helpful to meet with a magistrate judge to explore the possibility of settlement. Counsel had no objections to a settlement conference, so the court ordered that the parties meet with the magistrate judge within sixty days. (D.I. 27 at ¶ 6) After a teleconference, the settlement conference was scheduled for September 9, 1994. (D.I. 29)

Discussions between counsel regarding an impartial hearing apparently continued throughout the summer of 1994. According to plaintiff, defendants' counsel raised the possibility that the State would agree to a binding hearing on the issue of whether defendants had cause for firing plaintiff in exchange for plaintiff's agreement not to return to the Medical Examiner's Office. (D.I. 125 at 4) Defendants' counsel also suggested that a sitting State Superior Court judge or a retired Delaware Supreme Court judge might serve as an appropriate, impartial hearing officer. (D.I. 125 at 4)

On July 13, 1994, plaintiff's counsel proposed terms for a post-termination hearing:

(1) the hearing is binding;

(2) Dr. Hameli is reinstated with full back pay and benefits pending the results of the hearing;

(3) **the hearing officer is [a magistrate judge]**;

(4) the above procedure is incorporated in a stipulated order approved by Judge Robinson.

(D.I. 125 at A7) (emphasis added). Plaintiff did not explain his insistence on having a federal magistrate judge conduct the hearing. Defendants state, however, that "[b]y the time of the first meeting with [the magistrate judge] ... Plaintiff had already announced his position that no State employee would be acceptable as a hearing officer, on this theory that all were somehow tainted by Secretary Nazario's April 6, 1994 decision to terminate Hameli."

According to plaintiff, counsel discussed the July 13th proposal the following day, and defendants' counsel objected only to the provision regarding reinstatement and back pay. (D.I. 125 at 4–5) Plaintiff also claims that counsel broached the matter during a teleconference with the magistrate judge a short time after the July 13th letter.[6] At that time, the parties "discussed the possibility that, if Judge Robinson decided the case in Dr. Hameli's favor on the procedural due process issue, the mediation could convert to a hearing on the 'cause' issue. [The magistrate judge] was agreeable." (D.I. 125 at 5)[7]

As the September 9, 1994 settlement conference neared, the parties realized that they would not be prepared to discuss settlement at that time. Defendants state that, due to plaintiff's deposition schedule, discovery had not yet progressed to the point where the parties could articulate coherent settlement proposals. (D.I. 128 at 3) Plaintiff maintains that he no longer wished the magistrate judge to serve as a settlement facilitator because it might interfere with her ability to conduct a hearing on the issue of cause.

---

6. There is no record in the file of the exact date of this teleconference, nor was it transcribed by a court reporter.

7. Defendants do not expressly deny that this conversation took place, but contend instead that "the first discussions of the role of the magistrate judge occurred at the initial meeting with her" on September 9, 1994. (D.I. 128 at 3) This assertion appears at odds with defendants' counsel's comments during a September 7, 1994 teleconference and a stipulated order filed by the parties on September 8, 1994, in which the parties jointly asserted that "the due process hearing ... will be conducted by [a] Federal Magistrate Judge...." (D.I. 59)

(D.I. 125 at 6) A teleconference with the magistrate judge was held on August 18, 1994. As a result of that teleconference, the settlement conference was changed to a status conference. (D.I. 46) [8]

On September 2, 1994, several days before the status conference was to take place, this court issued an order granting plaintiff's motion for partial summary judgment. The court found that plaintiff's procedural due process rights had been violated by defendants' failure to offer him a post-termination hearing or a constitutionally adequate pre-termination hearing, and ordered him reinstated. The court further ordered that plaintiff

> receive a meaningful opportunity to be heard in a meaningful manner at a hearing characterized by, *inter alia*, proper notice of both the evidence used to support termination and the time of hearing, an impartial decision maker, and an opportunity to challenge said evidence and cross-examine witnesses to determine whether the State of Delaware had shown cause to terminate plaintiff.

(D.I. 55) Five days after the court issued its order, a conference was held in chambers. The primary purpose of the conference was to decide whether plaintiff would return to work pending the outcome of his hearing or remain on administrative leave. During the conference, counsel for defendants suggested that, for scheduling reasons, the parties might find someone other than the magistrate judge to conduct the hearing. (D.I. 62 at 3) The court replied that the "order didn't say anything about [a federal magistrate judge]. My order simply said a neutral hearing on this." (D.I. 62 at 3) At that point plaintiff's counsel elaborated somewhat on the nature of the magistrate judge's proposed role in the matter and on the parties' reasons for selecting her:

8. Again, the record contains no transcript of the teleconference. The court, therefore, is unable to discern the exact reasons for changing the nature of the September 9th conference.

9. In response, the court stated:
 Let me give you my understanding here. I don't know all the arrangements you have made. You made them without my knowl-

> Before your Honor's order came down, in fact, the last time we met, Ms. Kramarck raised with me the possibility of some kind of a hearing with somebody. And after discussion, I suggested that [a magistrate judge] had been asked to conduct the mediation, **and I thought because of the fact that [a magistrate judge] would be an arm of this Court, that [a magistrate judge] would be a good person to do that.**
>
> . . . .
>
> **[T]his was not part of your Honor's order, but it was a separate arrangement that had been made.**
>
> . . . .
>
> So this, in my view, has already been agreed to. And if the State is going to renege on its agreement, then I'm going to take proper action in that regard. But we currently have an agreement with the State for [a magistrate judge to conduct the hearing].

(D.I. 62 at 3–4) [9]

On the following day, September 8, 1994, the parties filed a stipulation commemorating, *inter alia*, their agreement on a hearing:

> In the interest of assuring proper functioning of the Office of the Chief Medical Examiner during the time when the parties will be preparing for and participating in the due process hearing, which the parties have agreed will be conducted by [a magistrate judge], the parties have agreed that Plaintiff will be on administrative leave with pay until such time as the decision is issued after the aforementioned hearing.

(D.I. 59) The stipulation provided no further details about the role the magistrate judge was to play in conducting the hearing. The court signed the stipulation on September 13, 1994.

> edge. Certainly I never contemplated, and my order does not require, a full-blown formal proceeding before a judicial officer. Now, if you all want to fight about that, you may, but as far as I'm concerned, that's not part of my order.
>
> (D.I. 62 at 5–6)

Over the course of the next month, before the hearing began, the parties and the magistrate judge attempted to further define the parameters of the hearing. On September 20, 1994, defendants contacted the magistrate judge regarding the scope of her duties as hearing officer:

When Thomas LoFaro, on behalf of Secretary Nazario, originally notified Dr. Hameli of his right to a hearing, it was anticipated that the hearing would result in a report to her [10] with findings of fact and recommended action. Now he has been reinstated pursuant to Judge Robinson's Order of September 2, 1994.

. . . .

Will we therefore presume that Your Honor will decide the propriety of the proposal to terminate? This would mean that the Court would render the ultimate decision, rather than a mere recommendation for action to be made by the Secretary.

(D.I. 125 at A14)

In response, plaintiff expressed the understanding that the parties had agreed the decision "would be binding, not merely advisory." (D.I. 125 at A17) However, in discussing the issue of whether the hearing should be public or private, plaintiff added an odd spin on the magistrate judge's role:

As I discussed previously, it is our view that Your Honor would be entitled to treat this matter as **more akin to a method of alternative dispute resolution,** rather than a formal judicial proceeding, and therefore could properly conduct the hearing in private.

(D.I. 125 at A18) (emphasis added).

Counsel attended a prehearing conference with the magistrate judge on October 6, 1994.[11] At that conference, the parties agreed that the decision would be binding. The magistrate judge then raised the related issue of appealability. She noted that in the ordinary course of events, a determination of cause would be subject to review by a state court. Because of her position as a federal magistrate judge, she did not feel that such review would be proper. She informed counsel, therefore, that she could not serve as the hearing officer unless the parties agreed that her decision would not be subject to state court review. The parties readily agreed.[12]

On October 7, 1994, the magistrate judge issued an order restating the substance of the parties' agreement:

The parties have consented to the Magistrate Judge's jurisdiction to preside over the hearing and to be the final determinator of law and of fact and to decide the issue of whether the State of Delaware has shown cause to terminate plaintiff. Further, the parties have agreed that the hearing shall be binding and non-appealable.

(D.I. 125 at A28) The October 7th order also set forth a description of the magistrate judge's role and jurisdiction which reflects the confused nature of the proceedings:

[S]ince the jurisdiction of the Magistrate Judge in this matter in part stems from the fact that this action has been filed in this Court, the post-termination hearing is a hybrid proceeding. The Court, although serving an administrative function, will make the final decision after a full and complete hearing in this matter occurs.

(D.I. 125 at A28–29) A letter from plaintiff's counsel regarding whether the magistrate judge, as the finder of fact, was the appropriate person to decide a motion in limine provides yet another view of the magistrate

10. The court assumes that defendants' counsel is referring to Secretary Nazario.

11. Unfortunately, a court reporter was not present at the conference, and thus there is no authoritative record of what transpired. The magistrate judge did issue an order on the following day, however, that memorialized the substance of the parties' agreement. (D.I. 125 at A–28) The court has no reason to doubt the accuracy of that document.

12. The court finds rather curious defendants' assertion that the magistrate judge "compelled" or "exacted" their agreement to have the hearing be binding and non-appealable. (D.I. 119 at 16–17) Defendants admit that once the magistrate judge raised the issue of non-appealability, "[w]ithout discussion or further elaboration, the parties agreed." (D.I. 128) Defendants' counsel does not claim to have been prevented from speaking during the conference. It seems clear to the court that counsel simply failed to raise any objections at the time.

judge's role: "I am perplexed as to why the State feels that the person acting as the decisionmaker in this case is thereby disqualified from ruling on a motion in limine. Why is Your Honor's situation any different than that of a judge in any non-jury trial?" (D.I. 125 at A34) Without commenting on plaintiff's characterization of her role, the magistrate judge ruled on the motion.

The magistrate judge did, however, alter her previous description of her role and jurisdiction in an order dated October 19, 1994. The order modified an earlier decision to hold the hearing in public, and was based in substantial part on a changed perception of her role:

> Selection of the Magistrate Judge as the hearing officer in this matter, although related to the fact that an action had been filed in this Court by Dr. Hameli, this hearing does not fall within the parameters of that action filed in this Court. In fact, Dr. Hameli's § 1983 action was authorized to be stayed by Judge Robinson until the process for determining whether the State of Delaware has shown cause to terminate Dr. Hameli has been completed.

(D.I. 125 at A50) The magistrate judge also offered a different, and rather telling, view of her jurisdiction to hear the matter:

> The Magistrate Judge has been selected by the parties to serve in th[e] capacity [of impartial decisionmaker]. As a result, this Court's present involvement in the hearing process **is not based on jurisdiction from the action filed by Dr. Hameli.** The Court is serving as the impartial decisionmaker, a right to which Dr. Hameli was entitled from the onset.
>
> . . . .
>
> Further, although the parties and the Magistrate Judge have employed the civil action number of Dr. Hameli's case in this Court to filings, Orders and decisions re-

lating to the termination hearing, such use is more a matter of convenience to have a particular file and location to maintain a record of the hearing process.[13]

(D.I. 125 at A50–52) (emphasis added).

Over forty witnesses testified during ten days of hearings, which were conducted between October 20 and December 8, 1994. The hearing took place in the magistrate judge's courtroom in the federal building. In several instances during and after the hearing, defendants' counsel made clear her understanding that no appeal of the decision would be possible.[14]

On February 23, 1996 the magistrate judge released a 115–page memorandum opinion in which she painstakingly reviewed all of the evidence presented at the hearing and stated, in great detail, her conclusions of law and fact. On March 8, 1996 defendants filed their motion to vacate the magistrate judge's decision.

## III. DISCUSSION

### A. The Parties' Contentions

Defendants present several grounds for their motion to vacate the magistrate judge's decision. First, they contend that the decision fails to make a finding on the central issue of whether plaintiff sexually harassed his employees. Without such a determination, defendants assert, the magistrate judge's other findings are useless. Second, defendants argue with several of the magistrate judge's findings of fact, contending that they are not supported by the evidence. Third, defendants contend that the magistrate judge misapplied the law in determining what constitutes cause for dismissal. Fourth, defendants argue that the magistrate judge had no authority to "compel" their agreement that her decision be binding and unappealable. Finally, defendants claim that

**13.** The records relating to the termination hearing were later removed from the file of the case pending before this court.

**14.** For example, in a letter dated January 17, 1995 regarding corrections to the transcript, defendants' counsel noted that "[o]f course, no appeal is possible in this case. . . ." (D.I. 125 at A–69) In another letter, she stated that "we are

most puzzled by Mr. Sandler's reference to the fact of the summary reversal of the decision of the AJ by the reviewing Court [in a case cited by plaintiff]. In *Hameli*, it has been expressly stipulated by the parties, and made part of the Court's earliest Order, that this decision is **not** appealable." (D.I. 125 at A–71—A–72) (emphasis in original).

the magistrate judge was not entitled to determine the proper level of discipline to be imposed on plaintiff. According to defendants, only the Secretary may perform that function.

Plaintiff, in response, argues that conducting the termination hearing was a proper part of a magistrate judge's role. He characterizes the hearing as a form of alternative dispute resolution and argues that the selection of a federal magistrate judge as a hearing officer was consistent with the Federal Magistrates Act and the local rules of this court. He also maintains that the agreement of the parties should control. Because the parties freely and unambiguously agreed to a binding and unappealable decision, he contends, no review is available in this or any other court. Furthermore, plaintiff argues that defendants are estopped from claiming that the Secretary has the sole authority to make the final decision regarding termination.

Because the court finds that the subject matter of the termination hearing fell outside the jurisdiction of the district court, and therefore outside the jurisdiction of a federal magistrate judge, it is unnecessary to address the parties' contentions regarding the substance of the opinion.[15]

**B. Jurisdiction Over the Motion to Vacate**

■ Before addressing the substance of defendants' motion, the court must ascertain whether it has jurisdiction to decide said motion. Under 28 U.S.C. § 1331, this court has original jurisdiction over cases arising under "the Constitution, law or treaties of the United States." The scope of a federal magistrate judge's jurisdiction is controlled by federal statute. Thus, the question of whether the magistrate judge's role in plaintiff's termination hearing exceeded the bounds of her authority is in and of itself a federal question covered by § 1331.

■ This court's jurisdiction is not abrogated by the parties' agreement to have the decision be unappealable. It is well established that parties may not waive a deficiency in subject matter jurisdiction. *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975); *Reich v. Local 30*, 6 F.3d 978, 982 (3d Cir.1993).

**C. Jurisdiction Over the Termination Hearing**

The record of this case reveals that from the outset the parties had no clear conception of the magistrate judge's role, nor did they appear to focus at any point on the issue of whether she had jurisdiction to hear the matter which they had placed before her. At various times, the magistrate judge was referred to as a "hearing officer" (D.I. 125 at A7), "an arm of th[e District] Court" (D.I. 62 at 3–4), "the final determinator of law and of fact" (D.I. 125 at A28), and likened to "a judge in any non-jury trial" (D.I. 125 at A34). The hearing itself was described as "akin to a method of alternative dispute resolution" (D.I. 125 at A18), a "due process hearing" (D.I. 59), "a hybrid proceeding" (D.I. 125 at A29), and "an administrative function." (D.I. 125 at A29) In hindsight, plaintiff urges the court to adopt the view that the magistrate judge was performing the function of alternative dispute resolution. Defendants, on the other hand, stress the trappings of federal authority which surrounded the proceedings and insist that the hearing was an adjudication rather than mediation or arbitration.

The Federal Magistrates Act confers on United States magistrate judges the jurisdiction to perform certain functions of United States commissioners and district court judges. 28 U.S.C. § 636. In setting out the jurisdiction and duties of magistrate judges, the Act speaks the language of delegation: "[A] judge may designate a magistrate [judge] to hear and determine any pretrial matter pending before the court...." 28 U.S.C. § 636(b)(1)(A). "A judge may designate a magistrate [judge] to serve as a spe-

---

15. It is also worth noting that the magistrate judge's opinion is not part of the record of this case. According to defendants' motion to vacate, a copy of the opinion was to be "Attached as Exhibit A." The motion also refers frequently to the opinion. Defendants did not, however, attach a copy when filing their motion. To this date neither party has introduced the opinion into the record.

cial master...." 28 U.S.C. § 636(b)(2). "A magistrate [judge] may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).[16] "Upon the consent of the parties, a [magistrate judge] may conduct any or all proceedings in a jury or nonjury civil matter ... when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c).

 The provisions of the Act clearly indicate that the role of a magistrate judge is to assist district court judges by taking on some of their duties. The legislative history of the Act and interpretations by the U.S. Supreme Court support this conclusion. "Congress intended magistrate [judges] to play an integral and important role **in the federal judicial system.**" *Peretz v. United States*, 501 U.S. 923, 928, 111 S.Ct. 2661, 2665, 115 L.Ed.2d 808 (1991) (emphasis added). The role of the federal magistrate judge is "to **assist the district judge** in a variety of pretrial and preliminary matters thereby facilitating the ultimate and final exercise of the adjudicatory function at the trial of the case." H.R.Rep. No. 94–1609 at 7 (1976) U.S.Code Cong. & Admin.News 1976 at 6167 (emphasis added). The Senate report refers to the function of magistrate judges as "render[ing] valuable assistance to the judges of the district courts...." S.Rep. No. 92–1065, at 3 (1972), U.S.Code Cong. & Admin.News 1972 at 3350. Congress also described the Federal Magistrates Act as "**cull[ing] from the ever-growing workload of the U.S. District courts** matters that are more desirably performed by a lower tier of judicial officers." H.R.Rep. No. 1629 (1968), U.S.Code Cong. & Admin.News 1968 at 4252, 4255 (emphasis added). This legislative history

underscores the lack of any intention on the part of Congress that federal magistrate judges would decide matters outside the jurisdiction of the district courts themselves.

Plaintiff asserts that the proceedings in dispute should not be vacated because the magistrate judge was serving in the accepted role of an impartial mediator, and because the parties voluntarily agreed to submit their dispute to her and abide by her decision. Plaintiff's position has some persuasive force, as courts traditionally look for ways to enforce agreements entered into by parties. For instance, in *DDI Seamless Cylinder v. General Fire Extinguisher*, 14 F.3d 1163 (7th Cir.1994), the magistrate judge was originally assigned to facilitate settlement discussions between the parties. When settlement negotiations broke down, the parties decided to submit their dispute to the magistrate judge for binding arbitration. *Id.* at 1164. The court concluded that a magistrate judge cannot act as an arbitrator in that capacity:

> [A]rbitration is not in the job description of a federal judge, including (see 28 U.S.C. § 636) a magistrate judge. It is true that there are part-time as well as full-time magistrate judges, and the former we suppose could serve as arbitrators when they were not doing their magistrate judge work.... Federal statutes authorizing arbitration ... do not appear to authorize or envisage the appointment of judges or magistrate judges as arbitrators.

*Id.* at 1165 (citations omitted). However, the court held the parties to the spirit of their agreement by reviewing the magistrate judge's conclusions with the same deference usually reserved to the decisions of arbitrators. By so doing, the court preserved the intent of the parties as clearly expressed in

---

**16.** Among the duties regularly assigned to magistrate judges are those related to alternative dispute resolution. Numerous judicial districts have explored the possibility of utilizing magistrate judges to facilitate alternative dispute resolution. R. Lawrence Dessem, *The Role of the Federal Magistrate Judge in Civil Justice Reform*, 67 St. John's L.Rev. 799 (1993); *Civil Justice Reform Act Report: Development and Implementation of Plans by the United States District Courts* (1994). Such participation for magistrate judges, it has been noted, may further the goals of the Civil Justice Reform Act. 28 U.S.C. § 471

(note). In this district, the magistrate judge has played an ever increasing part in settlement negotiations, and that role has been looked upon favorably. *Final Report from the Advisory Group Appointed Pursuant to the Civil Justice Reform Act of 1990* at 44 n. 82 (Oct. 1, 1991). Indeed, Local Rule 72.1(a)(1) authorizes the magistrate judge to "[c]onduct various alternative dispute resolution processes, including but not limited to judge-hosted settlement conferences, mediation, arbitration, early neutral evaluation, and summary trials (jury and nonjury)."

their agreement—to be bound by the magistrate judge's conclusions—while avoiding the jurisdictional obstacle inherent in calling the proceeding arbitration:

> An alternative characterization to *ultra vires* of what the magistrate judge did is possible. It is that the parties stipulated to an abbreviated, informal procedure for his deciding the case in his judicial capacity. Parties are free within broad limits to agree on simplified procedures for the decision of their case.... One way to describe what the parties and the judge did in this case is that they agreed that the judge would make a decision on a record consisting of the auditor's report plus the parties' objections ... and that they would not appeal the decision. So viewed, the procedure was not improper.

*Id.* at 1166. Having thus recharacterized the nature of the proceeding to which the parties had agreed, the court also found that the correct standard of review was that used in arbitration:

> We may assume that by talking the language of arbitration the parties in this case intended to reserve to themselves that much, but no more, right of judicial review, just as a criminal defendant who pleads guilty and by doing so is said to waive his right of appeal can nevertheless appeal in order to argue that his plea was involuntary.

*Id.*

 It is evident, then, that magistrate judges assume a variety of roles in the course of aiding the district court under 28 U.S.C. § 636, including those of mediator and adjudicator, and that these latter roles at least are consistent with § 636. It likewise is evident that parties may consent to the jurisdiction of a magistrate judge to finally resolve a matter, pursuant to § 636(c), and that the parties may waive review of that matter by an Article III judge. *See, e.g., Brown v. Gillette Co.,* 723 F.2d 192 (1st

Cir.1983); *AMF, Inc. v. Jewett,* 711 F.2d 1096, 1101 (1st Cir.1983) ("Those who give up the advantage of a lawsuit in return for obligations contained in a negotiated decree, rely upon and have a right to expect a fairly literal interpretation of the bargain that was struck and approved by the court."); *Goodsell v. Shea,* 651 F.2d 765, 766 (C.C.P.A. 1981).

 The question, however, is not what **role** the magistrate judge assumed in the course of these disputed proceedings, but whether she had jurisdiction over the subject matter of those proceedings. Although parties have wide latitude to settle their disputes as they choose, they cannot by agreement add to the jurisdiction of a federal judicial officer. *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975); *Reich v. Local 30,* 6 F.3d 978, 982 (3d Cir. 1993).

 In a case involving a federal question, a federal court may exercise jurisdiction over state law claims only where those claims arise from the same set of circumstances that gave rise to the federal law claim:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).[17] To exercise supplemental jurisdiction, the court must find that three requirements have been met. First, "'[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court.'" *MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1102 (3d Cir.1995), *citing United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct.

---

17. The statute also permits the district court to decline jurisdiction in certain instances:

 (1) the claim raises a novel or complex issue of State law,

 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

 (3) the district court has dismissed all claims over which it has original jurisdiction, or

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

1130, 1138, 16 L.Ed.2d 218 (1966). Second, "[t]he state and federal claims must derive from a common nucleus of operative facts." *MCI Telecommunications*, 71 F.3d at 1102. Finally, "the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding." *Id.* There is no doubt that plaintiff's due process claims had sufficient substance to permit this court's exercise of subject matter jurisdiction. In examining the second and third elements of this test, however, the essentially separate natures of the two controversies become clear.[18]

Plaintiff's due process and pendent state claims overlap only slightly with the issue of whether the state had cause to terminate plaintiff's employment. The latter focuses on plaintiff's conduct, the former on that of defendants. The two disputes present separate issues of law, different evidence, different analyses.

More tellingly, the words and actions of everyone concerned in this case reveal the expectation—indeed the overriding assumption—that claims involved in plaintiff's federal suit and those involved in his termination hearing would be resolved separately. When this court issued its order on September 2, 1994 requiring that defendants provide plaintiff with a proper hearing, no one asked or expected that the district court would carry out its own order. When counsel met in chambers just a few days after the order was issued and mentioned their intention to submit the issue to the magistrate judge, plaintiff's counsel acknowledged that "this was not part of your Honor's order, but it was a separate arrangement that had been made." (D.I. 62 at 3–4). Even more revealing are the comments of the magistrate judge herself, recognizing that she had "been selected by the parties" to serve as a hearing officer. She stated explicitly that her "present involvement in the hearing process **is not based on jurisdiction from the action filed by Dr. Hameli.**" (D.I. 125 at A50–52) (emphasis added). These comments, along with the words and actions of the parties, leave little doubt that all concerned regarded the termination hearing as separate from plaintiff's district court suit. Therefore, the court concludes that there was no supplemental jurisdiction over the cause issue.

## IV. CONCLUSION

Upon the request of the parties to this litigation, the magistrate judge for this district accepted a role in resolving the dispute between the parties. Although the role was never clearly characterized, the record provides ample evidence that the magistrate judge's responsibilities were defined, understood, and agreed upon by the parties. Some eighteen months after enlisting the magistrate judge's help, and only after the magistrate judge had concluded her participation by the issuance of a decision, defendants come to the court seeking relief from the decision. To say defendants' timing is suspect is to state the obvious. To say that the monumental waste of time and money engendered by this aborted proceeding can be laid entirely at defendants' feet is not entirely accurate; perhaps lulled by the seeming agreement of the parties, neither the parties nor the judicial officers involved analyzed with sufficient care the court's interest in this matter, to wit, its limited jurisdiction. Given the conclusion that this court has no subject matter jurisdiction over the cause issue, the court most reluctantly concludes that the proceeding before the magis-

18. Plaintiff cites *Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204 (3d Cir.1985) for the proposition that the district court does not need to have jurisdiction over the entire matter in order to enforce a binding decision by an arbitrator. In that case, the parties agreed to submit several issues, some of which were covered by an arbitration clause and others which were not, to a referee for a binding, unappealable decision. *Id.* at 206–07. Because the district court had no jurisdiction over the arbitrable issues, the reference was considered a "hybrid," a combination of a Rule 53 master and a conventional arbitrator. Despite the fact that this arrangement went beyond anything contemplated by the Federal Rules of Civil Procedure, the court held the parties to their agreement. *Id.* at 210–11.

The distinction, however, lies in the fact that the magistrate judge is herself a federal judicial officer. In *Baker*, the referee's jurisdiction was limited only by the parties' agreement; in this case, the magistrate judge's jurisdiction is limited by statute and by the Constitution to that of the district court.

trate judge is one over which the magistrate judge could not preside in any role.

The improvident detour the parties voluntarily chose has now deposited them at the exact point where they stood nearly two years ago when this court issued its order granting plaintiff's motion for partial summary judgment. Plaintiff has yet to receive a fair and meaningful termination hearing before an impartial decisionmaker. Defendants, therefore, are obligated to continue their compliance with the conditions of the court's September 2, 1994 order and conduct said hearing within thirty (30) days of the issuance of this opinion.